JAMES MALTESE, PLAINTIFF-APPELLANT, v. ROSE LUCIANO, DEFENDANT-RESPONDENT, AND ELSIE McMULLEN AND PETER LUCIANO, INTERVENORS-RESPONDENTS.

Argued October 24, 1949—Decided November 14, 1949.

*Mr. Samuel H. Nelson* argued the cause for appellant (*Mr. Jack Trugman,* attorney).

*Mr. Robert E. Rosenberg* argued the cause for respondents. (*Messrs. Brass & Brass,* attorneys).

The opinion of the court was delivered by

CASE, J.   The matter is here on our own certification.   It is a landlord and tenant action wherein the landlord refused to accept proffered rental payments upon the ground that they were so conditioned as to make for a substitution of tenants without his consent.   The tenant, according to his contention,

was Rose Luciano. Those who made effort to pay, but not under Rose Luciano's tenancy, were Rose's sister, Elsie McMullen, and her father, Peter Luciano. The trial court, after a faltering course, finally concluded that Elsie was a person in possession under the statute (*R. S.* 2:32–269) and therefore was authorized to make the payment. Thereupon the rent was paid, an earlier judgment for possession was vacated and, by court direction, the cause was discontinued. The landlord appeals.

Maltese, the landlord, instituted the action by filing an affidavit (*R. S.* 2:58–18, 2:32–266) which alleged that Rose Luciano was in possession of the premises under a rental agreement made between them October 30, 1946, running from month to month with the rental ($45.00) payable monthly in advance; that on August 31, 1947, Maltese and Rose Luciano entered into a supplemental agreement whereby the rental was increased to $51.00 per month; that Rose Luciano regularly paid the rental to and including the month of March, 1949, but defaulted in the April, 1949, payment and was holding over and continuing in possession. Rose Luciano was served personally with affidavit and summons on April 27, 1949. She did not appear, was not represented and did not defend. Her sister, Elsie, was present in court on the return day and informally stated that she had the rent and was willing to pay it but that the landlord had refused acceptance upon the ground that she had demanded a receipt in a name other than that of the tenant. The court considered that the matter should go to formal trial and proceeded thereto.

The landlord testified that at the time he purchased the property in 1945 Mrs. Centanni, a sister, was the tenant and that she and her child lived there and also Peter Luciano, Mrs. Luciano and Rose; that in September of 1946 the Centannis moved out and Elsie came in; that the landlord then made the aforesaid rental agreement with Rose and had not made a rental agreement with any other person; that in March, 1949, another sister, Mrs. Divona, and her daughter moved in; and that thereafter Rose married and left; that

Elsie McMullen tendered the rent on April 1, 1949, and demanded a receipt in her own name; that the landlord refused to issue such a receipt; that on April 5, 1949, he received a registered letter which contained a money order in the amount of the rent sent by Peter Luciano as remitter, and that he refused to accept the remittance.

Elsie McMullen was permitted to take the stand. She admitted that generally what the landlord had testified to was true but declared that her father was the tenant, that the rental had been paid by the daughters by way of board to the father, that there was no agreement with Rose for the underletting or subletting of the property or for an assignment of the tenancy, and that Rose was then in Florida on her honeymoon.

The judge, having reserved decision, later sent letters by registered mail to the attorney for the plaintiff and to Mrs. Elsie McMullen stating his conclusion that the tender of the rent had not been unrestricted but that a receipt had been demanded in a certain name—that of the father; that, however, under the statute the rent might be paid by a person in possession and that as Mrs. McMullen did, while on the witness stand, offer to pay the rent, opportunity would be given for her to pay the clerk $51 plus $3.26 costs, until the close of business on Thursday, May 12th, otherwise there would be a judgment for possession on behalf of the landlord. The rent was not paid within the time stated and judgment for possession was rendered. Warrant for removal was issued on May 19, 1949.

On May 24, 1949, Peter Luciano and Elsie McMullen came in with a petition on oath asking that the judgment for possession be vacated and that Peter Luciano as tenant or that Elsie McMullen as a person in possession in his behalf be permitted to pay the rent. In that petition it was averred that Peter Luciano was the tenant by virtue of a rental agreement made in June, 1942, with an earlier owner of the property; that the rental by whomever paid to the landlord had been paid on behalf of Peter as tenant; that when Elsie McMullen made tender of the April rent it was on behalf of

Peter as the tenant; that Peter Luciano, himself, as tenant, made tender of the April rent by registered mail and later, likewise, of the May rent; that the tender by Elsie in court was on behalf of Peter, as tenant; that the registered mail notice from the court failed of timely delivery because no one was at the house when delivery was attempted and that although notice of the letter was left and was received Elsie was unable to leave her work to go to the post office; and that the judgment for possession against Rose was invalid because Rose was not the tenant.

The court ordered the landlord to show cause why the judgment should not be opened and on the return, without taking further testimony, made these findings:

"In the case I find specifically that the landlord proved the relationship of landlord and tenant existed between him and Rose Luciano; that the rent was due on April 1st, 1949, and that such tenders as had been made were not unrestricted in that a receipt was always demanded in the name of someone other than the real tenant.

"I find as a fact that the tender made by Elsie McMullen on the witness stand was made by a person in possession and that the Court should have, then and there, ordered her to go into the Clerk's office and pay the rent plus the costs. This I failed to do.

"On the application to re-open my judgment I find as a fact that through inadvertence Elsie McMullen had not received the registered letter directed to her by the Court and that, in view of my finding that she was a person in possession she ought to be allowed to pay the rent. I therefore vacated the judgment of possession.

"With respect to the payment of rent by the person in possession I think that authority is found in *N. J. S. A.* 2:32–269 *as amended by Laws of* 1943, c. 66, p. 263, par. 1, and *N. J. S. A.* 2:58–21. * * * I feel that (*R. S.*) 2:32–88 gives authority for any person aggrieved to make application, which I find should include Elsie McMullen and her father."

An order was entered vacating the judgment for possession and giving leave "to the tenant to pay the rent aforesaid in the sum of $51." The clerk's docket shows that (no name given) "the person in possession paid the sum of $65.86 rent and costs." It is clear from the findings stated above that the vacating of the judgment for possession was at the instance, not of the tenant, but of Peter Luciano and Elsie McMullen and that it was intended to permit payment by the last named persons or one of them and should be so treated.

Rose Luciano was the tenant. The court so found, with supporting proofs. The tenant did not underlet or sublet the premises; she did not assign the tenancy; she did not make the defaulted rent payment; and she did not appear or defend the suit. Judgment was entered against her and was opened and vacated on the application of strangers to the suit, strangers whom the court considered were persons in possession within the meaning of the statute and so, although not theretofore parties, entitled to be heard and to preserve the possession by making payment of the rent. The court looked upon them as "aggrieved" persons. The court depended for its authority upon *R. S.* 2:32–269 and the related legislation next mentioned.

The statute, *R. S.* 2:32–269, as amended by *Chapter* 66, *P. L.* 1943, provides:

"If, in proceedings instituted under *paragraph 'b' of section* 2:32–265 of this Title, the tenant or person in possession of the demised premises shall at any time on or before entry of final judgment, pay to the clerk of the court out of which the summons has issued, the rent claimed to be in default by the oath filed with the clerk, together with the accrued costs of the proceedings, all proceedings shall be stopped and the receipt of the clerk shall be evidence of such payment. The clerk shall forthwith pay all moneys so received to the landlord or to the person making oath for him."

We reserve opinion on the divergence between this provision in the District Court Act and a comparable provision, *R. S.* 2:58–21, in the Landlord and Tenant Act. *Cf. Manahan v. Englewood*, 108 *N. J. L.* 249, 251 (*Sup. Ct.* 1931); *Jonas Glass Co. v. Ross*, 69 *N. J. L.* 157 (*Sup. Ct.* 1903).

The primary question is whether the statutory "person in possession" is comprehensive of Elsie McMullen or Peter Luciano. It is to be noted that the expression "person in possession" has a position in the statute of equal dignity with "the tenant." One might well understand them to be correlative references to the same legal entity. Certainly there is nothing in the two phrases to suggest antagonistic or competitive elements. Yet there is antagonism of the strongest kind between the legal aspects of the person here sued as the

tenant and the persons who have been accredited as persons in possession. Rose Luciano is the tenant and is sued as such. But both Elsie McMullen and Peter Luciano disavow such an attitude by Rose toward the premises. They renounce and denounce any right of Rose as tenant and will have none of it. Peter, they say, is the tenant by reason of a rental agreement between him and an earlier owner of the property; Maltese took, and holds, title subject to that tenancy; Rose has no rights as tenant and never has had such rights; whatever money was paid, physically, by her to Maltese was Peter's money and was paid on Peter's behalf; all of the tenders of rent which have been made since the institution of this suit by Elsie and by Peter were on behalf of Peter, as tenant, none of them for or on account of rent due from Rose. Those allegations are all made under oath by Peter and Elsie in their application, not for the issuing of a rule to show cause, but for the vacating of the judgment for possession and for permission to pay the rent, followed by the granting of both of those prayers in the order now under appeal, and are a part of the record. One of the strange inconsistencies involved in the disposition of the case is that the tender of rent made by Elsie, which the court found should have been received and finally, in effect, ordered received, was made on behalf of Peter Luciano, the pretended tenant, whereas the actual tenant, by the court's finding, was Rose whose future presence on the premises is left in doubt, with the apparent result that the landlord, whose tenant Rose has defaulted in her obligation, is obliged, against his will, to submit to a tenancy by Peter, with whom he has no privity. There is neither privity of estate nor privity of contract between the owner of premises and the persons whom the tenant may choose to make members of his or her family in any capacity. *Clyne v. Helmes,* 61 *N. J. L.* 358, 368 (*Sup. Ct.* 1898).

Such confusing legal consequences of themselves throw doubt upon the correctness of the court's view that one who is lawfully on the premises and is affected by the court action becomes a person in possession under the statute entitled, in parity with the tenant, to pay the rent and defend pos-

session against the owner and landlord. We think that so novel a doctrine was not the design and is not the effect of the statute and that earlier sections of the statute make this fairly clear.

The sections of the Revised Statutes which carry the summary district court proceedings for removal of tenant in certain cases are 2:32–265 *et seq. Section* 265 provides that any *lessee or tenant at will or at sufferance, or for a part of a year, or for one or more years,* of any houses, etc., *and the assigns, under tenants or legal representatives of such tenant or lessee,* may be removed in the manner therein prescribed and in the cases there mentioned; and among the cases mentioned are where such person holds over and continues in possession after notice and demand served either personally *upon the tenant or such person in possession,* and where *such person* holds over after a default in the payment of rent, and where *such person* is disorderly, etc., and a demand is served either personally *upon the tenant or such person in possession.* Here the words "such person in possession" clearly refer to "the assigns, under tenants or legal representatives" of the tenant or lessee.

*Section* 269, the nub of the argument, is set out in detail, *supra.*

The authority to pay is not to any one of a number of persons who may be occupying the property; it is narrowly confined to "the tenant or person in possession," which phrase, by our construction, has as its antecedent "the tenant or such person in possession" of *section* 265 which in turn has application to the lessee or tenant, his assigns, under tenants or legal representatives. The same comments apply to *R. S.* 2:58–17 *et seq.,* equivalent provisions of the Landlord and Tenant Act.

The right of Peter Luciano and Elsie McMullen to intervene is in serious doubt. The former Supreme Court held in *Brahn v. Jersey City Forge Co.,* 38 *N. J. L.* 74, 80 (*Sup. Ct.* 1875), that the statute as it then was made no provision for such an intervention and the suggestion was that if, by collusion, persons in lawful possession of premises might be

evicted without an opportunity of being heard, the Legislature might 'be appealed to for relief. Since that time the statutory provision has been made to read as hereinbefore stated so that *the tenant or person in possession* may pay the rent claimed to be in default and so stop the proceedings. But no collusion is here charged and we have expressed our view that rightful presence on the premises under the tenancy of another who is the defendant in the suit does not of itself make one a person in possession within the meaning of the statute. A review of some of the cases is contained in the learned opinion of Mr. Justice Perskie, sitting as a single justice of the Supreme Court, in *Compton v. Compton,* 113 *N. J. L.* 171 (*Sup. Ct.* 1934).

We rest our decision upon the finding that the words "the tenant or person in possession" are to be interpreted in the terms of *R. S.* 2:32–265 and refer to the tenant as therein defined or to his assignee, under tenant or legal representative and that neither Elsie McMullen nor Peter Luciano is such a person. The rental was not tendered or paid by one who came within that category.

Under that construction of the statute the facts as found by the trial court could lead only to a judgment for possession in favor of the landlord which, according to the showing of the record, was the judgment entered on May 13, 1949, made effective by a warrant for removal issued on May 19, 1949, and set aside by the order of May 26, 1949. *R. S.* 2:32–87 and 2:32–88 provides that whenever a judge of a district court reserves decision the clerk of the court shall, when the decision is made, notify by registered mail the attorneys of the respective parties, or the parties themselves if there be no attorneys, and that if the clerk fails to notify "the attorneys of the parties" the judge, on application to him by any person aggrieved by such failure, shall direct the clerk to enter the judgment or determination as of a date to be fixed by the judge, which shall be subsequent to the application. We make no distinction between a notice sent by the clerk of the court and one sent by the judge thereof. The trial judge, upon the reasoning that Elsie McMullen was a

person in possession and as such had made a tender in court, of the rent, considered that he should have ordered her forthwith to go to the clerk and pay the rent, and further that as he had not done so and she, through inadvertence, had not received the registered letter which he had sent, she and her father should be permitted, as aggrieved persons under *R. S.* 2:32–88, to make application for the opening of the judgment. The fallacy in this reasoning is that neither Elsie nor her father was a tenant or a person in possession or acted as agent or representative of a tenant or a person in possession and consequently neither was an aggrieved person within the application of the statute.

The final judgment entered on May 26, 1949, consisting of an order made on that day vacating the earlier judgment for possession, and the judgment of discontinuance then entered are reversed; and the record will be remitted for such further action as is not inconsistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance*—Justice HEHER—1.